# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 2:08-0143 |
| | | CIVIL NO. 2:12-0654 |
| VERSUS | * | JUDGE HAIK |
| TERRAL JAMES TAYLOR | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation is the Motion to Vacate filed pursuant to 28 U.S.C. § 2255 by *pro se* petitioner, Terral James Taylor.  [rec. doc. 91].  The Government has filed an Answer and Memorandum in Support, to which petitioner filed a Reply. [rec. docs. 93 and 96].  For the following reasons, the undersigned recommends that the Motion be **DENIED AND DISMISSED WITH PREJUDICE**.  Because the undersigned is able to make this recommendation based on the record, transcripts and briefs filed by the parties, no evidentiary hearing is necessary.[1]

## BACKGROUND

On May 14, 2008, petitioner, was named in an eight count indictment which charged petitioner with various drug and firearm offenses, namely, possession of stolen firearms, possession of firearms in furtherance of a drug trafficking crime, possession with intent to distribute five grams or more of methamphetamine, possessing with the intent to distribute methamphetamine on a premises where children are present or reside,

---

[1]No evidentiary hearing is required in a § 2255 petition where the claims made by the petitioner are either contrary to law or plainly refuted by the record.  *U. S. v. Green,* 882 F.2d 999, 1008 (5th Cir.1989).

maintaining a drug involved premises, receipt of a stolen motor vehicle and forfeiture of forty firearms, cash and a Toyota pick-up truck.  [rec. doc. 1]. These charges stemmed from a search of petitioner's residence on February 13, 2008, pursuant to a search warrant.

On May 27, 2009, defense counsel filed a Motion to Suppress alleging that Detective Ben Perkins was having a sexual relationship with petitioner's live-in girlfriend, Misty Dyer, and that the affidavit in support of the search warrant for petitioner's residence obtained by Detective Christian, without disclosing the relationship, contained information provided by Perkins to Christian and additionally contained information provided by confidential informant, Dyer.

Because a change of plea hearing had been set, by Order dated June 2, 2009, the government was not required to file opposition to the Motion and  no hearing on the Motion to Suppress was set.  [rec. doc. 47].

On June 9, 2009, petitioner pled guilty to count three of the indictment, to wit, possession with intent to distribute five grams or more of methamphetamine.  [rec. doc. 50].

In connection with the plea, petitioner executed a Plea Agreement in which he acknowledged, in writing,  the maximum penalty which could be imposed for possession with intent to distribute five grams or more of methamphetamine, namely, a mandatory term of imprisonment of five years up to forty years, a fine of up to $2,000,000.00, and a term of supervised release of up to five years. Petitioner also acknowledged that his plea

2

was free, knowing and voluntary and that no threats had been made against him, and that

no unwritten promises, representations, threats or inducements had been made to him

with regard to his guilty plea.  He further acknowledged that he was satisfied with the

assistance he had received from his counsel, Randal McCann, whom he believed to have

acted competently.  [rec. doc. 51].

Further, during his June 9, 2009 plea proceeding, Judge Haik verified that

petitioner's  plea was knowingly and intelligently entered, confirming that petitioner had

signed the Plea Agreement, after it was thoroughly explained to him by Mr. McCann, and

that he understood everything contained in the Agreement. [plea tr. rec. doc. 77, pg. 15-

16].  In response to the Court's inquiry, petitioner's counsel, Mr. McCann, also

acknowledged his satisfaction with petitioner's understanding of everything contained in

the document.  [*Id.* at pg. 16].

Petitioner additionally acknowledged that he had ample opportunity to discuss his

case with Mr. McCann and that he was "very much" satisfied with his representation.

Moreover, petitioner verified his belief that Mr. McCann knew and understood the facts

and circumstances of the case the government had against him. [*Id.* at pg. 6].

In connection with the plea, petitioner also executed an Affidavit of Understanding

of Maximum Penalty and Constitutional Rights in which he again acknowledged, in

writing, that he understood the charge to which he was to plead guilty, that he had been

furnished a copy of that charge, and that he had been personally addressed by the Court

and informed as to the maximum penalty which could be imposed for that charge.

Petitioner further acknowledged his understanding of his constitutional rights and acknowledged that he was aware that by pleading guilty he would waive those rights. Finally, he again acknowledged, in writing, that his guilty plea was free and voluntary and made without any threats or inducements whatsoever. [rec. doc. 51-1, pg. 1-2].

During his June 9, 2009 plea proceeding, in response to the Court's inquiry, petitioner again confirmed the knowing and intelligent nature of his plea, acknowledging that he had signed the Affidavit of Understanding after it was thoroughly explained to him by Mr. McCann, and that he understood everything contained in the document.  [plea tr. rec. doc. 77, pg. 13-14].

Judge Haik advised petitioner that should he accept his guilty plea, petitioner would waive his Constitutional right to trial by jury, his right to testify at trial, his right to call witnesses on his own behalf and to confront and cross-examine the government's witnesses, as well as his right against self-incrimination.  Petitioner indicated that he was willing to waive these rights. [*Id*. at  pg. 7-8].

Prior to acceptance of petitioner's plea, Judge Haik verified that petitioner's plea was free and voluntary, confirming that no one had threatened or leaned on or forced petitioner to plead guilty. [*Id.* at pg. 15].   Judge Haik further confirmed that, other than those items set forth in the Plea Agreement, no one had made any promises to induce petitioner to plead guilty. [*Id.* at pg. 17].   Finally, the Court verified that no one told petitioner that if he did not plead guilty, further charges would be brought against him, or that other adverse action would be taken against him. [*Id*. at pg. 15].

In response to the Court's inquiry, Mr. McCann confirmed that his client, petitioner, was competent to enter a guilty plea. [*Id*. at pg. 6].  After presenting a factual basis for the plea, petitioner's guilty plea was accepted by the Court, the Court expressly finding that the plea was knowing, intentional and voluntarily made. [*Id.* at pg. 30].

The factual basis for the plea is summarized as follows.  On February 13, 2008, petitioner's residence in Oberlin, Louisiana was searched pursuant to a search warrant based on information received from a confidential informant and independent police surveillance of the residence.  Law enforcement officers found thirty-four grams of pure methamphetamine, cash and forty firearms, including rifles, shotguns and pistols, some of which were loaded, and all within close proximity of the methamphetamine and cash. One of these rifles was found in a Toyota pick-up truck outside the residence.  [rec. docs. 51-2; 77, pg. 20-28].

During his plea proceeding, petitioner admitted that he signed the factual basis for the plea and that he did everything the government said he did.  Petitioner further acknowledged that there was no doubt in his mind that the government could prove every essential element of the case as outlined in the stipulated factual basis for the plea. [rec. doc. 77, pgs. 20-28].

 On December 15, 2009, petitioner was sentenced to eighty-seven months imprisonment. The remaining substantive counts of the indictment, counts 1, 2, 4, 5, and 6 were dismissed.  [rec. docs. 59 and 62].

Petitioner's appeal of his conviction and sentence was dismissed as frivolous by the Fifth Circuit on December 9, 2010, the Judgment issued as mandate on January 3, 2011. [rec. doc. 89].

In the instant motion to vacate, petitioner asserts the following claims for relief: (1) that the prosecutor, Colin Sims, engaged in prosecutorial misconduct by coercing petitioner to sign a plea agreement, based on misrepresentations and threats of additional charges; (2) that he received ineffective assistance of counsel because counsel participated in the alleged coercion with AUSA Sims, misadvised petitioner that he had waived his Constitutional rights on May 30, 2009 when he signed the Affidavit of Understanding of Maximum Penalty and Constitutional Rights, failed to pursue petitioner's Motion to Suppress, and failed to obtain discovery from the government to obtain exculpatory evidence regarding the inappropriate relationship between Dyer and Perkins; and (3) that the prosecution withheld exculpatory evidence of the inappropriate relationship between Dyer and Perkins.

## <u>LAW AND ANALYSIS</u>

**Claims Properly Considered in this §2255 Motion/Scope of Review**

A federal prisoner may collaterally attack his conviction and sentence by filing a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  Section 2255 provides four grounds justifying relief:  (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without

jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."

A federal prisoner may collaterally attack his conviction and sentence by filing a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  Section 2255 provides four grounds for relief:  (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."

While this language appears broad, the scope of review is actually narrow.  The Supreme Court and the Fifth Circuit have emphasized repeatedly that "a collateral challenge may not do service for an appeal." *United States v. Shaid,* 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*), *cert. denied*, 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992) *citing United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584 (1982). Following a conviction and exhaustion or waiver of the right to direct appeal, federal courts presume a defendant stands fairly and finally convicted.  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir.) *reh. denied* (1998) *citing Shaid,* 937 F.2d at 231-32; *Frady,* 456 U.S. at 164.  As a result, review under § 2255 is ordinarily limited to questions of constitutional or jurisdictional magnitude.  *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232; *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468 (1962).

However, those issues may not be raised for the first time on collateral review without a showing of both cause for the procedural default and actual prejudice resulting from the error.  *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232 *citing Frady,* 456 U.S. at 166.[2]

Other types of error may not be raised under § 2255 unless the defendant demonstrates that the error could not have been raised on direct appeal and, if condoned, would result in a complete miscarriage of justice.  *Cervantes*, 132 F.3d at 1109 *citing United States v. Pierce,* 959 F.2d 1297, 1301 (5th Cir.), *cert. denied*, 506 U.S. 1007, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992).

In a case involving a guilty plea, this requires a showing that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted" the petitioner.  *Bousley v. United States*, 523 U.S. 614, 623 (1998); *United States v. Torres*, 163 F.3d 909, 912 at fn 15 (5th Cir. 1999).

Under the applicable law, it appears that, with the exception of some of petitioner's ineffective assistance of counsel claims, petitioner's claims may not properly be considered in this § 2255 Motion as they were not presented on direct appeal and petitioner has failed to demonstrate either cause or prejudice for his default or actual innocence.  Nevertheless, all of petitioner's claims will be addressed.

---

[2]A departure from the cause and actual prejudice test might be warranted in cases "in which a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Shaid*, 937 F.2d at 232; *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2645 (1986).  Petitioner does not contest his actual guilt, thus this exception is inapplicable here.

No evidentiary hearing is required in a § 2255 petition where the claims made by the petitioner are either contrary to law or plainly refuted by the record.  *U. S. v. Green,* 882 F.2d 999, 1008 (5th Cir.1989).  The issues presented in the instant case are either contrary to law or plainly refuted by the record.  Accordingly, no evidentiary hearing is necessary.  The issues will be resolved by considering the briefs filed by the parties and the court record.

## I. Prosecutorial Misconduct/Knowing, Voluntary and Intelligent Nature of the Plea

Petitioner complains that his plea to count three of the Indictment was not knowingly, voluntarily and intelligently entered because the prosecutor, Mr. Sims, engaged in prosecutorial misconduct by coercing petitioner to sign a plea agreement, stating that Detective Perkins and Dyers were not engaging in a sexual relationship and threatening additional charges would be brought against petitioner if he refused to accept a plea bargain.

Although it is clear that petitioner's challenge to his guilty plea is procedurally barred, his claim is nevertheless without merit.  To be constitutionally valid, a guilty plea must be knowing and voluntary.  *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998) *citing  Harmason v. Smith,* 888 F.2d 1527, 1529 (5th Cir. 1989).   Accordingly, the court may not accept a guilty plea unless the defendant enters the plea voluntarily and with a complete understanding of the nature of the charge and the consequences of her plea.  This standard is rooted in the due process clause of the Constitution and is

applicable in both state and federal courts.  *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) *citing McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441 (1970) and *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969).

A guilty plea that was not knowingly, voluntarily, and intelligently entered is invalid.  *United States v. Guerra*, 94 F.3d 989, 994 (5th Cir. 1996).  However,  a federal *habeas* court will uphold a guilty plea "if it is shown by the record . . . that a defendant understood the charge and its consequences when he pled guilty."  *Deville v. Whitley,* 21 F.3d 654, 657 (5th Cir. 1994) *citing Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir.), *cert. denied*,  474 U.S. 838, 106 S.Ct. 117 (1985).  A defendant ordinarily will not be heard to refute his testimony given at a plea hearing while under oath.  *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998) *citing United States v. Fuller,* 769 F.2d 1095, 1099 (5th Cir.1985).  "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings."  *Id*. *quoting  Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1628-29, 52 L.Ed.2d 136 (1977).  Moreover, any documents signed by the defendant in connection with a guilty plea are entitled to "great evidentiary weight."  *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994).

For a guilty plea to be "intelligently" and "knowingly" entered, the defendant must understand both the true nature of the charge against him and "the consequences" of a guilty plea,  respectively.  *United States v. Briggs*, 939 F.2d 222, 227 (5th Cir. 1991);

*United States v. Pearson,* 910 F.2d 221, 223 (5th Cir. 1990), *cert. denied*, 498 U.S. 1093, 111 S.Ct. 977, 112 L.Ed.2d 1062 (1991).

A plea is intelligent if the defendant understood the nature and substance of the charges against him and not necessarily whether he understood their technical legal effect. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) *citing  Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991), *cert. denied*,  503 U.S. 988, 112 S.Ct. 1678, 118 L.Ed.2d 395 (1992).  The defendant must understand what he is being charged with.  *United States v. Suarez*, 155 F.3d 521, 524-25 (5th Cir. 1998).

With respect to guilty pleas, the "knowing" requirement that a defendant understand "the consequences" of a guilty plea means only that the defendant must know the maximum prison term and fine for the offense charged.  *United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996) *citing Barbee v. Ruth,* 678 F.2d 634, 635 (5th Cir. 1982), *cert. denied*, 459 U.S. 867, 103 S.Ct. 149, 74 L.Ed.2d 125 (1982); *Ables v. Scott*, 73 F.3d 591, 592-93 n. 2 (5th Cir. 1996), *cert. denied*,  517 U.S. 1198, 116 S.Ct. 1696, 134 L.Ed.2d 795 (1996) *citing United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990).

"[A] plea of guilty is not voluntary if it is induced by threats, misrepresentation, unfulfilled promises, or promises of an improper nature."  *United States v. Hernandez,* 234 F.3d 252, 255 at fn. 3 (5th Cir. 2000).

In the instant matter, the record is clear that petitioner's plea was entered knowingly, voluntarily and intelligently.  Petitioner was expressly advised of the nature of

11

the charge against him by the Court during his plea proceeding and he expressly
acknowledged, while under oath, that he understood that charge.  Petitioner was also
advised of the maximum prison term and fine for the offense charged in writing, and by
thorough and direct questions posed by Judge Haik.  Petitioner unambiguously
acknowledged that he understood the maximum penalty for his offense and the penalty
which could be imposed.

Although petitioner now claims that he was coerced on May 30, 2009 into signing
the Plea Agreement and Affidavit of Understanding and accepting the plea bargain
offered by the government, under threat that additional charges would be brought against
petitioner if he refused, thereafter, at his June 9, 2009 plea proceeding, petitioner
expressly admitted, while under oath, that he had not been threatened by anyone or forced
to enter a guilty plea as follows:

> THE COURT: Very good.  Mr. Taylor, has anyone threatened you or leaned
> on you or forced you in any way to plead guilty, or told you that if you did
> not plead guilty further charges would be brought against you or other
> adverse action would be taken against you?
> THE DEFENDANT: No, sir.

Further, while petitioner now claims that he was coerced into signing the Plea
Agreement and Affidavit of Understanding by misrepresentations of Mr. Sims that claim
is likewise refuted by the record.  Petitioner asserts by affidavit that he signed these
documents on May 30, 2009 before the hearing on his Motion to Suppress.  More
specifically, petitioner states that he initially rejected the plea offer, presented while

12

petitioner was in a holding cell with Mr. McCann and AUSA Sims, wherein Sims threatened petitioner with additional charges and told petitioner that the Judge would not believe the sexual relationship between Dyer and Perkins as stated in his Motion to Suppress and that the sexual relationship never happened.  However, petitioner signed the paperwork and agreed to the plea after he was removed from the courtroom and placed in a small room, again with Mr. McCann and AUSA Sims, wherein Sims repeated the alleged false information about the sexual affair.  [rec. doc. 91-2, pg. 20].

This version of events cannot be correct as the account is plainly refuted by the record before this Court.  A hearing on petitioner's Motion to Suppress was never set. Furthermore, May 30, 2009 was a Saturday, and the courthouse was closed.  On that date, petitioner was incarcerated as he had been since his February 13, 2008 arrest.  Indeed, during the plea proceeding, in response to the Court's inquiries, Mr. McCann stated that he had met with petitioner in the prison in Crowley after making a special appointment to allow him to visit petitioner on a Saturday morning.  [rec. doc. 77, pg. 12].

Notably, the Plea Agreement and Stipulated Factual Basis for Guilty Plea are dated as having been signed by petitioner and Mr. McCann on May 30, 2009 and Mr. Sims on June 9, 2009. [rec. doc. 51, pg. 7].  Further, while the Affidavit of Understanding contains no date of execution, in his Motion, petitioner admits that he signed the Affidavit of Understanding on May 30, 2009 as well. [rec. doc. 91-1, pg. 10 and 12 at fn. 1 and 13-14].

However, even if AUSA Sims did tell petitioner that his Motion to Suppress would fail, that statement was not a misrepresentation of the facts.  The documentation provided by petitioner refutes his claim that Dyer and Perkins were engaging in a sexual relationship at the time the search warrant for his residence was obtained.  Dyer's January 4, 2011 email to petitioner states that she met with AUSA Sims, who was trying to determine if the relationship between Dyer and Perkins began before petitioner went to jail.  Dyer states in capitol letters, "IT DID NOT!!! IT HAPPENED MONTHS LATER!! Ben [Perkins] had to take a polygraph to prove it!!" [rec. doc. 91-2].  Whether the couple later became involved sexually, after the search warrant for petitioner's residence had been obtained and petitioner was incarcerated on drug and firearms charges, is not relevant to this proceeding.

Finally, while petitioner also presents an October 8, 2011 affidavit of Michelle O'Connor, petitioner's sister[3] and a teacher at the Head Start program that petitioner's daughter Brooklyn attended, that affidavit provides no support for petitioner's present claim of misrepresentation.  O'Connor states that she spoke with Carol Slaney, Brooklyn's teacher, who told her that Dyer stated to her, Slaney, that she and Perkins had been seeing each other "for a little over a year."  The affidavit references February 2009 as the date of this conversation.  However, that date is not certain as O'Connor prefaces her testimony stating "all dates and times mentioned herein are approximate." [rec. doc. 91-2, pg. 17].

---

[3]*See* rec. doc. 91-1, pg. 20 at fn. 2.

Furthermore, the affidavit is not competent evidence as the substantive allegation is based entirely on hearsay – a conversation between Dyer and Slaney, which was then allegedly repeated to O'Connor.

For these reasons, the Court finds that petitioner's plea was knowingly, voluntarily and intelligently entered.  In sum, petitioner's sworn testimony during the plea hearing and the documents signed by petitioner in connection with his guilty plea belie any argument that petitioner's plea was unknowingly, involuntarily or unintelligently entered. He has provided no competent evidence that he was coerced by AUSA Sims by threat or misrepresentation, nor has petitioner provided competent evidence that Dyer and Detective Perkins were engaging in a sexual relationship at the time the warrant for petitioner's residence was obtained.  In light of the above, petitioner is not entitled to *habeas* relief on this claim.

## II.  Ineffective Assistance of Counsel

Courts can consider claims of ineffective assistance of counsel that are brought for the first time in a § 2255 motion. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). However, petitioner's guilty plea constitutes a waiver of all non-jurisdictional defects in the prior proceedings.  *United States v. Glinsey,* 209 F.3d 386,392 (5th Cir. 2000); *United States v. Bendicks*, 449 F.2d 313, 315 (5th Cir. 1971). "This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *Glinsey*, 209 F.3d at 392.

15

To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).

The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness.  *Id.* at 688.  Judicial scrutiny of counsel's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.

The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (citation omitted).  Thus, this court's review "strongly presum[es] that counsel has exercised reasonable professional judgment."  *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) *quoting  Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th  Cir. 1986).

*Strickland'*s prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.[4] A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) *citing Strickland,* 104 S.Ct. at 2068.   With respect to guilty pleas, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Glinsey,* 209 F.3d at 392 *quoting Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

Thus, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

A petitioner must affirmatively prove prejudice.  *Deville*, 21 F.3d at 659; *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d 1062,1066 (5th Cir. 1998).  Self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland's* prejudice element."  *Sayre*, 238 F.3d at 635.  Moreover, allegations of a mere possibility of a different outcome are insufficient to

---

[4]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:
An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment.  *Cf. United States .v Morrison,* 449 U.S. 361, 364-65 (1981).

Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

When a defendant challenges a conviction , the question is whether there is reasonable probability that absent the errors the fact-finder would have a reasonable doubt respecting guilt.

*Strickland, supra*, at pages 691-692.

establish prejudice. *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999).

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94.  Petitioner must satisfy both prongs of *Strickland,* demonstrating both that counsel's  performance was deficient and that the deficiency prejudiced the defense.  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.*" Green,* 160 F.3d at 1043.

Petitioner contends that he was denied the effective assistance of counsel because his attorney, Randal P. McCann, participated in the alleged coercion with AUSA Sims, misadvised petitioner that he had waived his Constitutional rights on May 30, 2009 when he signed the Affidavit of Understanding of Maximum Penalty and Constitutional Rights, failed to pursue petitioner's Motion to Suppress, and failed to obtain discovery from the government which would have contained "significant exculpatory evidence to support the suppression motion."  For the following reasons, these claims are without merit and, accordingly, do not warrant *habeas* relief.

Initially the undersigned notes that petitioner's present claims are expressly refuted by petitioner's sworn testimony during his plea proceeding.  Petitioner acknowledged, in open court,  while under oath, that he had ample opportunity to discuss his case with Mr.

McCann, that he believed that McCann knew and understood the facts and circumstances of the case the government had against him and that he was "very much" satisfied with Mr. McCann's representation. [plea tr. rec. doc. 77, pg. 6].  Despite these representations, petitioner now claims the contrary.  Thus, defendant's current contentions are specifically refuted by his sworn testimony.  Additionally, no evidence has been presented of any such collusion between Sims and McCann. The Court knows Mr. McCann to be an able, experienced and zealous advocate, who has extensive experience representing criminal defendants. The Court believes that the allegation that McCann adnd Simms colluded to coerce a plea of guilty by the defendant is ludicrous.

For the reasons set forth above, petitioner's first claim of ineffective assistance of counsel, that Mr. McCann participated in the alleged coercion with AUSA Sims fails.

Likewise, petitioner's second claim, that Mr. McCann misadvised petitioner that he had waived his Constitutional rights on May 30, 2009 when he signed the Affidavit of Understanding of Maximum Penalty and Constitutional Rights, is without merit.  During petitioner's June 9, 2008 plea hearing, Judge Haik expressly advised petitioner of his Constitutional rights, and then expressly informed petitioner that these rights would be waived only after he entered a guilty plea and that guilty plea was accepted by the Court as follows:

> THE COURT: If you plead guilty and if I accept your guilty plea, do you understand that you will have to waive your rights to a trial and the other rights we've just discussed?
> THE DEFENDANT: Yes.
> THE COURT: There will be no further trial and I'll simply enter a judgment

of guilty and sentence you at a later date on the basis of your guilty plea.
THE DEFENDANT: Yes, sir.
THE COURT: All right.  If you plead guilty, do you also understand that
you will have to waive your right not to incriminate yourself since I will
have to ask you questions about what you did in order to satisfy myself that
you are guilty as charged and you will have to acknowledge your guilt?
THE DEFENDANT: Yes.
THE COURT: Are you willing to waive and give up those rights to a trial
and the other rights we've discussed?
THE DEFENDANT: Yes, sir.

[rec. doc. 77, pg. 8].

Thus, because the Court correctly advised petitioner when the waiver of his

Constitutional rights would become effective, namely after petitioner entered his guilty

plea and after the Court accepted his guilty plea, to which petitioner acknowledged his

understanding, petitioner cannot demonstrate he suffered any prejudice as a result of Mr.

McCann's alleged actions, as any alleged error of counsel was subsequently corrected by

the Court. *See Lott v. Hargett*, 80 F.3d 161, 167-68 (5th Cir. 1996) (a defendant suffers no

prejudice due to receiving misinformation from his attorney where the plea colloquy

reflects that the district court corrected any such misinformation).

In sum, even if counsel was deficient for failing to properly advise petitioner of

when the waiver of his Constitutional rights would become effective, because the Court

corrected any such error petitioner cannot show prejudice.   His ineffective assistance of

counsel claim therefore fails.

Petitioner's claim that counsel failed to pursue petitioner's Motion to Suppress, as

well as his claim that counsel failed to obtain discovery from the government which

would have contained "significant exculpatory evidence to support the suppression motion" are procedurally barred by the entry of petitioner's guilty plea because they are not alleged to have rendered petitioner's guilty plea involuntary. *See Glinsey; Bendicks*, *supra.* These claims will nevertheless be addressed.

Petitioner faults Mr. McCann for failing to pursue petitioner's Motion to Suppress. He asserts that the Motion was filed after Mr. McCann performed an independent investigation of the alleged sexual relationship between Dyer and Perkins, interviewing petitioner's sister Michelle O'Conner and Carol Slaney. The record also indicates, however, that the government likewise performed an investigation into the allegation. That investigation resulted in Ms. Dyer's steadfastly denying that the sexual relationship began before petitioner's arrest and Perkins having taken a lie detector test to prove the allegations were in fact unfounded. [rec. doc. 91-2, pg. 2].

In light of the government's evidence, it was not unreasonable for Mr. McCann to have negotiated a plea bargain for petitioner, obtaining an agreement from the government to forgo prosecution of all but one substantive count in exchange for petitioner's plea. It has long been held that the decision of whether or not to pursue a motion to suppress is a strategic decision, which is subject to a presumption that the decision constitutes reasonable trial strategy. *See Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984); *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985). Based on the record before this Court, petitioner has not overcome the presumption that the decision was not reasonable trial strategy, nor has petitioner shown prejudice.

Petitioner's final claim, the counsel failed to obtain discovery from the government which would have contained "significant exculpatory evidence to support the suppression motion" is likewise without merit.  The record reveals that petitioner's former counsel, Wayne J. Blanchard, requested discovery from the government. [rec. doc. 23].  The record further reveals that this discovery was turned over to Mr. McCann upon his appointment in early April 2009, because Mr. McCann obtained a continuance of the April 20, 2009 trial based on the fact that he had an insufficient opportunity to review the material. [rec. doc.  39].   Accordingly, petitioner has not demonstrated deficient performance.

Petitioner's claim is additionally subject to dismissal because petitioner cannot demonstrate that any exculpatory evidence existed which counsel failed to obtain. Petitioner conclusorily states that had McCann requested discovery, "the government would have turned over significant exculpatory evidence to support the suppression motion." [rec. doc. 91-1, pg. 21].   Such "conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.*" Green,* 160 F.3d at 1043.

Furthermore, the record belies petitioner's allegation.  As set forth above and as discussed more fully below in connection with petitioner's *Brady* claim, the government's investigation resulted in no exculpatory or favorable evidence in support of petitioner's position – Ms. Dyer steadfastly denied that the sexual relationship began before petitioner's arrest and Perkins took a lie detector test to prove the allegations were in fact

unfounded. [rec. doc. 91-2, pg. 2].

For this reasons, petitioner is not entitled to relief with respect to his ineffective assistance of counsel claims.

### III.  *Brady* **Claim**

Petitioner next contends that the government withheld exculpatory evidence from the defense, namely the results of the investigation it performed into the allegations of the sexual relationship between Dyer and Detective Perkins outlined in petitioner's Motion to Suppress.   Petitioner asserts that had this evidence been disclosed, counsel would have proceeded with petitioner's suppression motion.  Although it is clear that petitioner's *Brady* claim is procedurally barred, his claim is nevertheless without merit.

There is no "general constitutional right to discovery in a criminal case". *Pennsylvania v. Ritchie*, 107 S.Ct. 989, 1002 (1987).  However, the Due Process Clause prohibits the prosecution from suppressing evidence that is favorable to the accused and is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution.  *Kyles v.  Whitley*, 115 S.Ct. 1555, 1565 (1995); *Brady v. Maryland*, 83 S.Ct. 1194, 1196-1197 (1963).

In order to establish a  *Brady* violation, the defendant must establish three elements:  (1)  the prosecution suppressed or withheld evidence; (2) the evidence was favorable; and (3) the evidence was material to either guilt or punishment.  *East v. Johnson*, 123 F.3d 235, 237 (5th Cir. 1997); *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997).  Moreover, the jurisprudence adds a fourth element: that the evidence was not

23

discoverable through the exercise of reasonable diligence.  *Kutzner v. Cockrell,* 303 F.3d 333, 336 (5th Cir. 2002); *Rector,* 120 F.3d at 558.  Thus, the state is not obligated to disclose every piece of evidence in its possession; only evidence that is favorable to the accused and material to guilt or punishment.  *Id.*

In addition to exculpatory evidence, impeachment evidence is subject to disclosure under *Brady*.  *East v. Scott*, 55 F.3d 996, 1002 (5th Cir. 1995) *citing United States v. Bagley*, 105 S.Ct. 3375, 3380 (1985).  However, "[t]he prosecution is not obliged to disclose impeachment evidence unless the evidence is 'favorable to the accused.'" *Id.* at 1005.

Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 1002 *quoting Bagley*, 105 S.Ct. at 3383.  "[A] 'reasonable probability' of a different result is shown when the non-disclosure could reasonably be taken to put the whole case in such a different light as to undermine confidence in the jury verdict." *Spence v. Johnson*, 80 F.3d 989, 994 (5th Cir. 1996), *cert. denied*, 117 S.Ct. 519 (1996).

However, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Rector,* 120 F.3d at 562.  Moreover, "[w]hen the undisclosed evidence is merely cumulative of other evidence, no *Brady* violation occurs." *Spence,* 80 F.3d at 995.  Finally, *Brady* "does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation

of the defense's case." *East*, 55 F.3d at 1004.

Here, the evidence obtained by the government was not favorable to petitioner. Hence, petitioner's claim fails. *See East, Kutzner* and *Rector, supra*.   Moreover, petitioner could simply have obtained the same evidence from his former girlfriend, Dyer. Indeed, that is exactly how he received the information on which he bases his present claim. *See Kutzner* and *Rector, supra*.   *Brady* "does not place any burden upon the Government to conduct a defendant's investigation . . . ." *East*, 55 F.3d at 1004.

For the foregoing reasons, the undersigned recommends that Terral James Taylor's § 2255 Motion be **DENIED and DISMISSED WITH PREJUDICE.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A  party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

Signed September 6, 2012, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE